McBRIDE, Judge.
During the early part of 1965 (January 21 or 22), American Sugar Company (hereinafter referred to as the “employer”), due to a seasonal reduction in work, notified certain of its employees, thirteen of whom are involved in this proceeding, they would he laid off.
On February 15, 1965, while said employees occupied a laid-off status, a fire and explosion occurred at the employer’s refinery which damaged the plant extensively. Immediately thereafter, the employer offered each employee, including all who had previously been laid off, the opportunity of taking his paid vacation leave or his retirement preparation leave, as the case may be. The agreement between the employer and the Union stipulates for annual paid vacation periods, and for retirement preparation leaves for employees between fifty-seven and sixty-four years old. The older employees are entitled to the latter leave so that they “may prepare” for retirement. The length of employment determines the period of such leave. All employees entitled thereto who accepted the offer were placed in the category of being on vacation leave or on retirement preparation leave whichever was applicable, and restored to the payroll. Each employee received weekly remuneration from the employer equal to his regular wage during the period he was in either classification.
Each employee upon the termination of his vacation or retirement preparation leave was recalled to work.
While on layoff the employees herein concerned applied for unemployment compensation benefits under the Louisiana Employment Security Law, R.S. 23:1471 et seq. The Administrator granted such benefits to each during the whole layoff period including the term of the paid vacation or paid retirement preparation leave. The employer then, in accordance with R.S. 23 :- 1541, sought a review of the Administrator’s rulings, setting forth as its reasons therefor that the employees were disqualified from receiving unemployment benefits during said latter periods.
On successive appeals by the employer, the Appeals Referee and the Board of Review respectively affirmed the rulings. Upon the Board of Review’s affirmance of the rulings of the Appeals Referee the employer sought a judicial review thereof (R.S. 23:1634) by filing the instant proceeding in the Civil District Court for the Parish of Orleans.
After a hearing below, the trial judge entered a judgment affirming the orders and decisions of the Board of Review from which the employer has prosecuted the instant appeal to this court.
Each application for compensation was assigned a docket number by the Louisiana Division of Employment Security, and although the Board of Review separately decided each claim, the tenor of each decision is identical except as to the necessary variations.
Under the hearing “Evidence” the Board made a similar finding of fact in each case:
“The evidence, in connection with this appeal, shows that the claimant, an employee of the American Sugar Company, is protected in his employment by a collective-bargaining agreement negotiated by his agent, the United Packinghouse, Food and Allied Workers, AFL-CIO Local Union 1101. The working agreement provides various fringe benefits, among which is a vacation schedule for all regular employees. Members of the work staff were subjected to layoffs *328 for various reasons during the claimant’s tenure of employment. The claimant, by virtue of his tenure of employment, is entitled presently to vacation pay. The •employer is obligated to give a full vacation to any employee in the succeeding year after one in which the employee worked 1250 hours. This claimant had worked the required number of hours in 1964 to be eligible for full length vacation pay in 1965. The employer has a right to prepare a vacation schedule. However, this is done in accordance with the working agreement between the company and the union. Should the company require an employee to work while on vacation, the employee will be paid his rate of pay in accordance with the contract in addition to vacation pay. Qualified employees shall not forfeit vacation payment by reason of subsequent layoff, discharge, voluntary leaving, or retirement.”
R.S. 23:1634 provides that the findings of the Board of Review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.
The observation made by the Board of Review that: “ * * * Should the company require an employee to work while on vacation, the employee will be paid his rate of pay in accordance with the contract in addition to vacation pay * * * ” is wholly unsupported by any evidence. The only evidence bearing on the point in the record is the agreement between the American Sugar Company and the Union, which, in Art. X(4), specifically prohibits the receipt by an employee of such dual pay. Art. X(4) reads thus: Employees shall not be allowed to work and receive vacation pay for the same period of time.”
Based on the facts it found, the Board of Review by a two to one vote of its members, reached the following conclusions, which are likewise generally applicable to each claimant, to-wit:
“The evidence in this case shows that the claimant was given a vacation payment in 1965, based upon his having worked at least 1250 Hours during 1964. The collective-bargaining agreement guaranteed him nonforfeiture of said benefits. The claimant exercised his guaranteed rights by claiming an earned vacation payment during a period of reduction in force by the American Sugar Company, and it is in this premise that the claimant believes he should qualify for unemployment insurance. It is the majority opinion of this Board that when the employer had a reduction in force, temporary or otherwise, he did in fact lay the claimant off. Therefore, the claimant then became unemployed within the meaning of the Louisiana Employment Security Law. * * * Therefore, it is the majority opinion of this Board that vested or earned vacation pay cannot be considered normal weekly wages.” (Emphasis ours)
The dissenting member of the Board held to the view that the majority decisions are in error, in that the employer placed the employees back on the company payroll at the time of offering them their paid vacations or paid retirement preparation leave, thereby removing them from the laid-off status. The dissenting member further believed that the purpose of the law was to provide security for those employees who were suffering from lack of funds during periods of unemployment and that such is not the case when an employee is receiving vacation pay.
The judge below gave written reasons for the judgment appealed from. We note that his honor inadvertently fell into error when he stated “The company unilaterally scheduled the vacations and leave of these employees during a lay-off period.” There was a voluntary mutual agreement between the employer and employees regarding the vacations and the retirement preparation leaves. No employee was coerced or compelled to take his leave at the particular. time.
*329 We think that under the situation which exists here where an employee receives vacation or retirement preparation pay during part of the time when the plant is shut down he is ineligible for benefits for those weeks for which he was paid. The emoluments paid by the company were equal to the wages and relate to the employment as the employee was restored to the payroll during the period, thus being removed from the laid-off classification.
The Employment Security Law (23:1472, [12] A) provides:
“‘Employment’ means, subject to the other provisions of this Subsection, any service including service in interstate commerce, performed for wages or under any contract of hire * * * ”
In 23:1472(19) it is stipulated:
“An individual shall be deemed to be 'unemployed’ in any week during which he performs no services and with respect to which no wages are payable to him * * * ”
As seen above, to be considered unemployed a person must receive no wages. The vacation or retirement preparation pay is the equivalent of wages and must be dealt with as such. Holiday pay constitutes “wages” for unemployment payment purposes. Erickson v. General Motors Corp., Buick-Oldsmobile-Pontiac Division, Kansas City, 177 Kan. 90, 276 P.2d 376, 380. Vacation pay constitutes “wages” whether the claimants be partially or totally unemployed during the vacation period. Eastern Gas & Fuel Associates v. Hatcher, 144 W.Va. 229, 107 S.E.2d 618, 621.
It seems to us that the stipulation in the agreement between the employer and the Union providing that no employee shall receive vacation pay and at the same time earn wages with the company is of much pertinence. The same prohibition should be applied with reference to unemployment compensation benefits covering the periods for which the employees were paid' as unemployment compensation benefits are chargeable against the experience-rating record of the employer. R.S. 23:1533. Under the unemployment security program (R.S. 23:1532 and 1534) the standard rate of tax contribution to the Division of Employment Security of the State Department of Labor payable by each employer is 2.7% of his payrolls, but the employer’s contribution rate may be reduced in accordance with a fixed schedule, if within a given period he has a favorable experience-rating under which the total of his tax contributions exceeds the total of unemployment benefits chargeable to his experience-rating record. American Sugar Company has paid its contributions to the Division of Employment Security on the amounts paid for the vacation and retirement preparation leaves. To allow the claimants to recover unemployment benefits for the very same weeks for which they have been paid might well work an injustice and hardship on the employer as such benefits will be debited to its experience-rating record and could increase the contribution rate or inhibit a reduction thereof.
Counsel for the Board of Review points to R.S. 23:1600, which provides' that an unemployed individual is eligible' for benefits with respect to any week if the administrator finds that (1) he has made claim for benefits; (2) he has registered for work at an unemployment office; (3) that he is able to work, and is available for work. The argument then follows that, even though the claimants were receiving vacation or retirement preparation pay, they were “available for work” not knowing when they would be recalled by the employer, and, having met the other requirements of R.S. 23:1600, they should receive benefits. The employees we are dealing with were not “available for work” within the intendment of the Louisiana Employment Security Law during the paid vacation or leave period. They were employees of the American Sugar Company.
*330 The precise question before us is res novó in Louisiana. However, there are analogous cases in other jurisdictions. The Court of Appeals of Maryland in Allen v. Maryland Employment Security Board, 206 Md. 316, 111 A.2d 645, stated:
“In our view, the fact that the vacation pay was paid at the time of lay-off, rather than before, is not a distinction which should alter the result. The period of time with respect "to which the payment is considered to be made can logically come after the lay-off as before. Money which is vacation pay, when it permits the employee to take time off •at an interval between periods of regular work, does not necessarily become a bonus merely because it is uncertain how soon after it is paid, regular work will be resumed * * *.
* * * * * *
“The great weight of authority is that vacation pay is to be considered referable to so long a time following its payment as it would have taken to earn it. During such period, the recipient has not been considered by the Court to have been unemployed. * * * ”
In West Virginia, the Supreme Court of Appeals in State by Bassett v. Hatcher, 147 W.Va. 748, 131 S.E.2d 172, said:
“It is the view of this Court that these claimants received their vacation pay at their request, made through their union representative, and that the claimants, in effect, elected to take their vacation at that time. * * * Inasmuch as this Court has held that vacation pay constitutes wages within the meaning of the unemployment compensation act, it is the opinion of this Court to affirm the ruling of the Circuit Court of Kanawha County in which he found that these claimants were disqualified from receiving benefits during their respective periods immediately following the layoff for which they were compensated by vacation pay.”
See also 30 A.L.R.2d 366.
For the reasons assigned, that portion of the judgment appealed from approving and affirming the rulings of the Board of Review is reversed and it is now ordered that said judgment be amended so as to provide that each unemployment compensation claimant in docket numbers 385-BR-65, 386-BR-65, 398-BR-65, 399-BR-65, 400-BR-65, 402-BR-65, 390-BR-65, 392-BR-65, 393-BR-65, 394-BR-65, 395-BR-65, 401-BR-65 and 388-BR-65 be declared disqualified from receiving any benefits under R.S. 23:1471 et seq., during the period of his paid vacation or retirement preparation leave, as the case may be, and as thus amended and in all other respects the judgment is affirmed.
Reversed and amended